**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                     :
W.R. and K.R.,                       :   CIVIL ACTION NO. 09-2268 (MLC)
individually and o/b/o H.R.,         :
                                     :
     Plaintiffs,                     :        MEMORANDUM OPINION
                                     :
     v.                              :
                                     :
UNION BEACH BOARD OF                 :
EDUCATION,                           :
                                     :
     Defendant.                      :
                                     :
```

**COOPER, District Judge**

Plaintiffs, W.R. and K.R., individually and on behalf of their minor son H.R. (collectively, "Plaintiffs"), brought this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), seeking to recover attorneys' fees and related costs as the prevailing party in an administrative proceeding. (Dkt. entry no. 1, Compl.) Plaintiffs now move for a preliminary injunction ordering Defendant, Union Beach Board of Education ("Defendant"), to provide specific special education services pending litigation. (Dkt. entry no. 7, Notice of Mot. for Prel. Inj.)

Defendant counterclaimed, seeking reversal of the April 28, 2009 decision of an administrative law judge ("ALJ") ordering the special education services Plaintiffs now seek the Court to order Defendant to provide. (Dkt. entry no. 3, Answer & Countercl.; dkt. entry no. 16, 4-28-09 ALJ Decision.)

Plaintiffs invoke the IDEA "stay put" provision, 20 U.S.C. § 1415(j), as well as its implementing regulation, N.J.A.C. § 6A:14-2.7(u), which effectively act as an automatic preliminary injunction in IDEA litigation. <u>Drinker ex rel. Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 (3d Cir. 1996). The Court heard oral argument on November 5, 2009. For the reasons stated below, the Court will deny Plaintiffs' motion.

## BACKGROUND

H.R. is ten years old and a fifth grader at Memorial School in the Union Beach School District. He was classified as eligible for special education in 2004. He has been diagnosed with dyslexia, a mixed expressive/receptive language disorder, central auditory processing weakness, and attention deficit hyperactivity disorder, and is thus classified as "multiply disabled" under applicable New Jersey regulations. (Dkt. entry no. 14, 5-19-08 Individualized Education Plan ("IEP") at 1; 4-28-09 ALJ Decision at 3.)[1] The parties have been involved in litigation and due process administrative proceedings regarding H.R.'s education since the beginning of H.R.'s third grade school year.

---

[1] <u>See</u> N.J.A.C. § 6A:14-3.5(c)(6) ("'Multiply disabled' . . . means the presence of two or more disabling conditions, the combination of which causes such severe educational needs that they cannot be accommodated in a program designed solely to address one of the impairments.").

2

The IEP originally proposed on June 6, 2007, for the 2007-08 school year would have placed H.R. in a self-contained classroom, in which H.R. would be taught all subjects in a small group of students by a special education teacher.  (4-28-09 ALJ Decision at 13; Admin. R. at 187, 213.)  Plaintiffs disagreed with the self-contained classroom placement, and a revised 2007-08 school year IEP discussed at an August 27, 2007 meeting placed H.R. in mainstream classes, except for "resource room replacement" classes for two forty-five minute sessions daily for both language arts literacy instruction and math.  (Admin. R. at 271, 295.)  This IEP was subsequently revised again on October 4, 2007, to place H.R. in a mainstream math class with an aide providing in-class support.  (Admin. R. at 379.)

Plaintiffs filed their first petition for due process in the New Jersey Office of Special Education Programs ("OSEP") on October 18, 2007, seeking review of the IEP proposed for the 2007-08 school year, which was H.R.'s third grade year.  (Dkt. entry no. 10, Pl. Br. at 1; dkt. entry no. 9, Cert. of W.R. at ¶ 9.)  Specifically, Plaintiffs sought "an order for a daily reading programming for a [sic] least 50 minutes per day of a research based, multi-sensory and phonics based program."  (10-18-07 Due Process Pet., Agency Dkt. No. 2008-12945.)  Plaintiffs also requested an extended school year for five fifty-minute reading sessions per week.  (Id.)

OSEP transferred Plaintiffs' due process petition to the New Jersey Office of Administrative Law ("OAL") on December 18, 2007. The parties entered into a Consent Order providing for evaluations of H.R. and providing H.R. instruction in the Wilson Language program. During his third grade year, H.R. received language arts literacy instruction five days a week for eighty or ninety minutes in a resource room replacement with a special education teacher trained in the Wilson reading program, who also served as H.R.'s in-class aide in his other mainstreamed academic classes. (4-28-09 ALJ Decision at 10-12.) The resource room replacement class consisted of the teacher, an aide, and five or six other students. (Id. at 10.)

Defendant proposed an IEP for the 2008-09 school year on June 19, 2008, which Plaintiffs rejected because it did not specify a particular reading program or the number of sessions per week. (Admin. R. at 813, 829.) Plaintiffs filed a second due process petition on August 14, 2008, as to the 2008-09 school year IEP. (4-28-09 ALJ Decision at 2.) The second due process petition sought the same relief proposed in Plaintiffs' first due process petition. (7-16-08 Due Process Pet., Agency Dkt. No. 2009-13879.)

During H.R.'s fourth grade year, he received language arts literacy instruction in a resource room with five other students

for ninety minutes daily. (4-28-09 ALJ Decision at 15.) He also received in-class support from an aide during his other classes.

The ALJ consolidated the two due process petitions and conducted fourteen days of hearings between October 2, 2008, and April 2, 2009. The ALJ issued a decision on April 28, 2009, with approximately seven weeks left in H.R.'s fourth grade school year. In that opinion, the ALJ found that the 2007-08 and 2008-09 IEPs "were sufficiently reasonably calculated to provide H.R. with a free appropriate public education in the least restrictive environment," as required by the IDEA. (4-28-09 ALJ Decision at 22.) The ALJ also found, however, that the slow pace of Wilson language instruction in the fourth grade in a group of six students "has not resulted in sufficient reading progress for H.R." (4-28-09 ALJ Decision at 23.) The ALJ stated that the evidence showed that while H.R. is intellectually capable of learning to read at a "functionally literate" sixth grade level, the testifying witnesses agreed that he remained at the first- to second-grade level in reading comprehension and ability. The ALJ concluded that "[w]hile H.R. has made progress, it has not been sufficient since H.R. is still reading at a first- or second-grade level. As such, additional remedial measures are necessary." (4-28-09 ALJ Decision at 31.)

The ALJ ordered the school district to reform the IEP to
> provide one-on-one teacher-to-student intensive
> language arts literacy instruction for two forty-five-

>minute periods daily during the school year and in the extended school year for six weeks, plus a teacher aide in regular academic classes, and speech-language and occupational therapies as needed until H.R. can read at a functionally literate sixth-grade level.

(4-28-09 ALJ Decision at 32.)

Defendant revised H.R.'s 2008-09 IEP on May 4, 2009, in response to the ALJ's ruling. The revised IEP provided two forty-five minute periods of one-on-one intensive literacy instruction for the remainder of the 2008-09 school year. Defendant also offered Plaintiffs two forty-five minute periods of one-on-one intensive literacy instruction for six weeks in the extended school year during the summer of 2009, but the parents declined because the school district proposed that the sessions be scheduled two hours apart, with no instruction in between. Instead, the parents arranged for private instruction during the summer.

Plaintiffs and Defendant participated in meetings regarding the 2009-10 school year IEP in July and August of 2009. For H.R.'s fifth grade year, the proposed IEP provided language arts literacy instruction in a small group in the resource room. (Dkt. entry no. 18, 7-28-09 IEP.) Plaintiffs objected to this IEP because it did not provide one-on-one language arts literacy instruction. Plaintiffs filed a third due process petition in the OAL on August 14, 2009, challenging the 2009-10 school year IEP. (Dkt. entry no. 19, 8-14-09 Due Process Request.)

6

Plaintiffs sought enforcement of the ALJ's decision for the 2009-10 school year in the OSEP, which rejected Plaintiffs' request on August 26, 2009.  The OSEP ruled that the April 28, 2009 ALJ decision pertains to the 2007-08 and 2008-09 school years only.  (Dkt. entry no. 25, Def. Opp'n Br. at 3 & Kalac Aff., Ex. A.)  Plaintiffs then sought emergent relief in the OAL, seeking an order that Defendant "provide one-on-one teacher-to-student intensive language arts literacy instruction for two forty-five-minute periods daily during the school year and in the extended school year for six weeks . . . until H.R. can read at a functionally literate sixth-grade level" or until a decision could be reached on the pending due process request.  (Dkt. entry no. 21, 9-15-09 Request for Emergent Relief.)  An ALJ, not the same one who had issued the April 28, 2009 decision, denied this application for emergent relief for lack of jurisdiction to interpret the April 28, 2009 decision, and in deference to the proceedings in this Court.  (Dkt. entry no. 25, Kalac Aff., Ex. B.)  That same day, Plaintiffs filed the instant motion for a preliminary injunction in this Court.  (Dkt. entry no. 7, Notice of Mot. for Prel. Inj.)  Plaintiffs' motion asks the Court to order Defendant to provide:

1.   One-on-one teacher-to-student intensive language arts literacy instruction for two forty-five-minute periods daily during the school year and in the extended school year for six weeks;

2.   A teacher aide in regular academic classes;

7

      3.    Speech-language and occupational therapies;

      4.    Continued placement in resource room math instruction.

(Dkt. entry no. 11, Proposed Order Granting Mot. for Prel. Inj.) H.R.'s current fifth grade educational program already provides all of the relief sought, with the exception of one-on-one language arts instruction.  Plaintiffs request that the Court order this relief to continue "until H.R. can read at a functionally literate sixth-grade level or until a final decision is issued in this matter."  (Id.)

## DISCUSSION

**I.   Applicable Legal Standards**

Plaintiffs move under the so-called "stay put" provision under the IDEA, which provides:

> Except as provided in subsection (k)(4) of this section [pertaining to placement during appeals of disciplinary proceedings], during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed.

20 U.S.C. § 1415(j); see also 34 C.F.R. § 300.518.  "Stay-put orders are designed to maintain the status quo during the course of proceedings," essentially functioning as an automatic preliminary injunction.  J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 272 (3d Cir. 2002); see also Ringwood Bd. of Educ. v. K.H.J. o/b/o K.F.J., 469 F.Supp.2d 267, 269 (D.N.J. 2006).

> The corresponding New Jersey state regulation provides:
>
> Pending the outcome of a due process hearing, including an expedited due process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program or placement unless both parties agree. . . .
>
>> 1. If the decision of the administrative law judge agrees with the student's parents that a change of placement is appropriate, that placement shall be treated as an agreement between the district board of education and the parents for the remainder of any court proceedings.

N.J.A.C. § 6A:14-2.7(u).

For purposes of the instant motion, the Court thus must determine H.R.'s "current educational placement." Plaintiffs argue that the ALJ's April 28, 2009 decision ordering one-on-one intensive language arts literacy instruction constitutes the current educational placement under the stay put provision. (Pl. Br. at 9.)

Neither the IDEA nor the state and federal regulations implementing it define "current educational placement." See Drinker, 78 F.3d at 865 n.13. However, the purpose of the stay put provision is "to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." Honig v. Doe, 484 U.S. 305, 323 (1988) (construing stay put provision previously codified at 20 U.S.C. § 1415(e)(3)); see also Fuhrmann

9

v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1038 n.7 (3d Cir. 1993).

A parent may invoke the stay put provision when a school district proposes "a fundamental change in, or elimination of, a basic element of" the current educational placement. Lunceford v. D.C. Bd. of Educ., 745 F.2d 1577, 1582 (D.C. Cir. 1984); see also M.K. v. Roselle Park Bd. of Educ., No. 06-4499, 2006 WL 3193915, at *10 (D.N.J. Oct. 31, 2006).  This "threshold question" determines whether a party is entitled to an injunction under the stay put provision.  See DeLeon v. Susquehanna Cmty. Sch. Dist., 747 F.2d 149, 152 (3d Cir. 1984); Henry v. Sch. Admin. Unit No. 29, 70 F.Supp.2d 52, 60 (D.N.H. 1999) (holding that plaintiff parents had burden of proving that the defendant school district was proposing to change student's placement in order for the stay put provision to apply).  The question of current educational placement "cannot be resolved simply by determining whether the School District is proposing to change the physical location where [a student] will attend school." Henry, 70 F.Supp.2d at 60; see also Spilsbury v. District of Columbia, 307 F.Supp.2d 22, 27 (D.D.C. 2004).  Rather, the "touchstone" in interpreting the stay put provision "has to be whether the decision is likely to affect in some significant way the child's learning experience."  DeLeon, 747 F.2d at 153 (finding no significant change in transportation of severely

disabled child where new IEP proposed transportation by a stranger rather than student's parent, and transportation was with other children instead of alone). No change in placement occurs when a student's IEP and classes remain substantially similar. See Weil v. Bd. of Elem. & Secondary Educ., 931 F.2d 1069, 1072 (5th Cir. 1991).

Upon a showing that a school district has proposed a change to a classified student's educational placement, a court must discern the proper stay put placement. The Court of Appeals for the Third Circuit has held that the "plain meaning of 'current educational placement' refers to the operative placement actually functioning at the time the dispute first arises." Pardini v. Allegheny Intermediate Unit, 420 F.3d 181, 192 (3d Cir. 2005) (internal quotation and citation omitted). "The meaning of 'educational placement' falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ., 103 F.2d 545, 548 (7th Cir. 1996).

## II. Legal Standards Applied Here

The Court first considers whether Defendant has actually proposed a significant change in educational placement so as to trigger the stay put provision of 20 U.S.C. § 1415(j). The Court finds that one-on-one instruction as opposed to a small group resource room setting of two teachers and six students does not

11

constitute a "fundamental change, or elimination of," H.R.'s educational placement.  <u>Lunceford</u>, 745 F.2d at 1582.  H.R. has remained at the same school, receiving language arts literacy instruction in a resource room replacement class for two forty-five minute periods daily, since the disputes first arose in 2007.  His placement under the 2009-10 IEP, now challenged by Plaintiffs in ongoing due process proceedings in the OAL, does not fundamentally differ from H.R.'s previous IEPs, including the revised IEP of May 4, 2009 through June 28, 2009.  See <u>DeLeon</u>, 747 F.2d at 152-54.  That the 2009-10 IEP placing H.R. in a small group resource room setting for language arts literacy instruction is not a significant change in his educational placement is highlighted by the ALJ's decision, which expressly found that either a one-to-one or one-to-three teacher to student ratio would provide H.R. a free appropriate public education.  (4-28-09 ALJ Decision at 22-23.)

The <u>Henry</u> court considered "relevant circumstances" in determining whether the school district had proposed a fundamental alteration of the student's placement, including whether:  (1) the educational program set out in the proposed IEP is a revision of the prior IEP; (2) the student would be educated with non-disabled children to the same extent under the proposed IEP; (3) the student would have the same opportunities to engage in non-academic and extra-curricular activities; and (4) the

12

proposed placement represents a significant change in position along the continuum from the most restrictive to the least restrictive options.  Henry, 70 F.Supp.2d at 60-61 (finding that proposed IEP moving student from private middle school to public high school fundamentally altered child's educational placement when he became too old for the middle school).  Here, these circumstances are not implicated.  H.R.'s school day remains fundamentally the same now as it was in May and June of 2009, the sole exception being that his language arts literacy instruction occurs in a small group resource room setting rather than one-on-one.[2]

The relief sought by Plaintiffs also represents a change from a less restrictive to a more restrictive environment. The IDEA dictates that a student be placed in the "least restrictive environment."  See 20 U.S.C. § 1412(a)(5)(A); N.J.A.C. § 6A:14-1.1(b)(5).  One-on-one instruction is more restrictive than a small group resource room setting.  34 C.F.R. § 300.115 (requiring states to ensure that a "continuum of alternative placements is available to meet the needs of children with disabilities"); N.J.S.A. § 18A:46-14 (enumerating continuum of

---

[2] In the event that H.R.'s math instruction is occurring differently now than it was in May and June of 2009, the parties agreed at oral argument that the current dispute does not involve H.R.'s math instruction.  It appears that H.R. has been receiving math instruction in a resource room replacement class, and the parties agree that he should continue to do so.

special education facilities and programs, and listing "[i]ndividual instruction at home or in school" as the most restrictive); see also Tallman v. Barnegat Bd. of Educ., 43 Fed.Appx. 490, 496 n.3 (3d Cir. 2002).

The line of cases relied on by Plaintiffs is inapposite, as most of the "change in placement" cases involve proposed changes of schools and, by extension, the entire setting and curriculum, as well as the question of whether the parents or the school district should bear the cost of the placement. See, e.g., Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996) (affirming district court's denial of school district's motion to stay state special education appeals panel's finding that school district's proposed IEP did not provide a free appropriate public education, and ordering school district to pay for private school in which parents had unilaterally placed student); Montgomery Twp. Bd. of Educ. v. S.C. o/b/o D.C., No. 06-398, 2007 WL 275722 (D.N.J. Jan. 29, 2007) (affirming ALJ decision, at summary judgment stage, that private school rather than public school was appropriate placement for student, and finding school district responsible for private school tuition). Moreover, in Susquenita, the court found that a new stay put placement was created when a state education appeals panel ruled in favor of the parents' unilateral decision to enroll the student in private school because the administrative ruling effectively constitutes

14

an agreement by the state and the parents to change the educational placement of the student.  96 F.3d at 83; see also School Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 372 (1985) (noting that administrative appeal's decision in favor of parents' unilateral placement of student in private school "would seem to constitute agreement by the State to the change of placement" for purposes of stay put provision's prohibition on either party changing the student's educational placement "unless [the parties] otherwise agree").  In contrast, here the ALJ did not rule "in favor" of either the parents or the school district, but rather adopted elements of each side's arguments in fashioning an order.[3]  The Court therefore finds no occasion to infer agreement between the State and the parents as suggested by these cases.

Another case cited by Plaintiffs, D.W. o/b/o S.W. v. Commercial Township Board of Education, OAL Dkt. No. EDS 276-07, Agency Dkt. No. 2007 119975, 2007 NJ AGEN LEXIS 35 (N.J. OAL Jan. 25, 2007), granting a parent's application for emergent relief and requiring the school district to continue providing the student an in-class aide at least 60% of the time, was decided by an entity with only persuasive authority.  We are more inclined to look to the OSEP's letter pertaining to this case for

---

[3] The Court makes this observation without considering the ultimate issue in the Complaint in this case, namely, whether Plaintiffs are a "prevailing party" entitled to attorneys' fees.

guidance, which found the ALJ's April 28, 2009 decision limited to the 2008-09 school year only and denied Plaintiffs' application for emergent relief to enforce the ALJ's decision.[4] The latter provides more persuasive authority than an OAL decision in an unrelated case.  See Ringwood Bd. of Educ., 469 F.Supp.2d at 270 (finding letter by OSEP persuasive as to proper stay put placement in light of fact that OSEP "is an agency created to administer the IDEA and as such, any interpretations or explanations offered on the IDEA are reliable and noteworthy").

    Even presuming that Defendant's placement of H.R. in a small group resource room setting for language arts literacy instruction constitutes a "fundamental" change to his "current educational placement," proceeding next to the question of H.R.'s "current educational placement" for stay put purposes, the Court still finds that Plaintiffs are not entitled to the relief sought.  H.R.'s "current educational placement" is the last functioning IEP before this dispute arose.  Pardini, 420 F.3d at 192; see also Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625-26 (6th Cir. 1990).  It is undisputed that there was no

---

[4] The OSEP considered Plaintiffs' argument that Defendant was "not in compliance with the order of the Administrative Law Judge," and rejected Plaintiffs' request for enforcement of that order "because the decision at issue pertains to the 2007-2008 and 2008-2009 school years, and is no longer applicable now that the 2009 extended school year has ended."  (Dkt. entry no. 25, Kalac Aff., Ex. A.)

16

functioning IEP in place in July and August of 2009, when the dispute as to the 2009-10 IEP arose. The current dispute arose in October of 2007, when Plaintiffs filed their first due process petition with regard to the 2007-08 school year IEP, and the propriety of the IEPs for the 2007-08, 2008-09, and 2009-10 school years remain at issue. Thus, the last functioning IEP when the dispute first arose was the IEP for the 2006-07 school year.

The 2006-07 IEP provided for two forty-five minute sessions daily of language arts literacy instruction in the resource room replacement class, with one of those two sessions being a specialized reading program. (Admin. R. at 103, 119.) To the extent that the remaining provisions of the 2006-07 IEP differ from the relief sought by Plaintiffs here, such as the fact that in 2006-07 H.R. received math instruction in a mainstream classroom with an aide, rather than in the resource room as he is currently receiving math instruction, the stay put provision does not apply because Plaintiffs and Defendant are in agreement. See 20 U.S.C. § 1415(j) ("[U]nless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child. . . .") (emphasis added).

The Court also finds that Defendant was reasonable in interpreting the ALJ's decision as being limited to the 2007-08

17

and 2008-09 school years and, accordingly, implementing the ALJ's order for the remainder of the 2008-09 school year and the 2009 extended school year only.  The cases cited by the court in Montgomery Township for the proposition that the stay put provision renders "school districts responsible for pendent placement including years subsequent to the year for which an IEP is at issue," also all involve unilateral placement of a classified student in a private school and disagreement over who should pay the attendant costs.  See Montgomery Twp., 2007 WL 275722, at *15.  To find that the ALJ's April 28, 2009 ruling constitutes the stay put placement "would not further the purpose of the IDEA's stay put provision:  to preserve the status quo in child's [sic] educational setting and program while a dispute over those matters is underway."  L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ., No. 09-4422, 2009 WL 2998153, at *4 (D.N.J. Sept. 15, 2009).  In this case, H.R. has been in a small group resource room setting for language arts literacy instruction for the past several years, and only received one-on-one instruction at school for seven weeks. Additionally, the OSEP determined that the ALJ's decision is limited by its terms to the 2007-08 and 2008-09 school years and the 2009 extended school year.  Thus, the Court finds that the May 2, 2009 – June 28, 2009 IEP was not the last functioning IEP before the dispute arose, but rather, the IEP for the 2006-07 school year.

Plaintiffs argue that even if the Court declines to order the relief sought pursuant to the IDEA stay put provision, it should instead grant such relief using its authority under Federal Rule of Civil Procedure ("Rule") 62 to "preserve the status quo."  (Dkt. entry no. 26, Pl. Reply Br. at 11.)  Having found that the stay put provision does not apply in the manner Plaintiffs suggest, the Court declines Plaintiffs' invitation to exercise its discretion to grant injunctive relief under either Rule 62(c) (injunctions pending an appeal) or Rule 65(a) (preliminary injunctions).  See Ringwood Bd. of Educ., 469 F.Supp.2d at 269, 271; see also S.K. o/b/o N.K. v. Parsippany-Troy Hills Bd. of Educ., No. 07-4631, 2008 WL 4561512, at *13 ("The stay-put provision dispenses with the need for the Court to weigh such factors as irreparable harm and likelihood of success on the merits and removes the Court's discretion regarding whether an injunction should be ordered.").

In light of the ALJ's findings that H.R. has received some educational benefit in his current placement in small group resource room language arts and literacy instruction, and the guidance of the Supreme Court of the United States that substantive compliance with the IDEA requires only that a student's IEP be "reasonably calculated to enable the child to receive educational benefits," Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 (1982), the Court would be

disinclined to make a finding of irreparable harm or success on the merits in this instance.  (4-28-09 ALJ Decision at 20-23.)

## CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' motion for a preliminary injunction.

The Court will issue an appropriate order separately.


       s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:   November 19, 2009